# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### MIDLAND-ODESSA DIVISION

|  |  |
|---|---|
| **D&D DESIGNTECH, LTD.,** | |
| **Plaintiff** | **CASE NO.  7:26-cv-246** |
| **v.** | |
| **SUZHOU TUBEPLUS STAINLESS STEEL CO., LTD. a/k/a TUBEPLUS, and SUZHOU LANDER INDUSTRIAL CO., LTD.,** | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

## COMPLAINT FOR PATENT INFRINGEMENT

Defendants Suzhou Tubeplus Stainless Steel Co., Ltd. a/k/a Tubeplus and Suzhou Lander Industrial Co., Ltd. willfully copied D&D DesignTech's patented anti-siphon back pressure check valve that is used in the oilfield for chemical injection.  Defendants manufacture their knock-offs in China, import them into the United States, and market them here in the Permian Basin as a cheaper substitute for D&D DesignTech's patented valve.

| D&D DesignTech's Patented Valve | Defendants' Infringing Knock-off |
|---|---|



D&D DesignTech, Ltd. files this Complaint for willful patent infringement against Defendants Suzhou Tubeplus Stainless Steel Co., Ltd. and Suzhou Lander Industrial Co., Ltd. seeking damages for Defendants' infringement of U.S. Patent No. 12,398,816 and injunctive relief. In support of its claims for relief, D&D DesignTech, Ltd. alleges as follows:

## THE PARTIES

1. Plaintiff D&D DesignTech, Ltd. ("D&D") is a Texas Limited Liability Company with its principal place of business located at 1916 6th Street, Snyder, Texas 79549.

2. D&D is a global leader in manufacturing and distributing chemical injection products for the crude oil and natural gas industries. Recognizing D&D's innovations, the United States Patent Office has awarded D&D patents that protect a range of its products. Since establishing its operations in the Permian Basin, D&D has expanded internationally and serves customers in approximately forty nations around the world.

3. Defendant Suzhou Tubeplus Stainless Steel Co., Ltd. ("Tubeplus") is a natural-person owned limited liability company organized under the laws of the People's Republic of China, with a principal place of business at Building A, Suzhou City Life Plaza, No. 251 Pinglong Road, Gusu District, Suzhou, Jiangsu 21500.

4. Tubeplus claims to manufacture oilfield equipment, including the infringing chemical injection valves, and steel tubing products that it demonstrates, imports, markets, offers for sale, and sells in the United States. Tubeplus specifically targets customers in Texas and in this judicial district by direct sales and distribution through its website (https://www.sztubeplus.com/) and in concert with co-defendant Lander.

5. Defendant Suzhou Lander Industrial Co., Ltd. ("Lander") is a natural-person owned limited liability company organized under the laws of the People's Republic of China, with a

principal place of business at Room 1615, Building 8-2, Pingjiang Tiandi Commercial Center, No. 777 Liansheng Road, Gusu District, Suzhou, China.

6.    Lander claims to offer a variety of products "since the trend of economic globalization has developed with an irresistible force." *See* https://www.made-in-china.com/showroom/ suzhoulander.

7.    Upon information and belief, Lander and Tubeplus act in concert through the same individual(s) to import, market, sell, and distribute the infringing Tubeplus-branded anti-siphon injection valve in Texas, this judicial district, and in hydrocarbon-producing regions throughout the United States.

## JURISDICTION AND VENUE

8.    D&D brings this action for patent infringement under the patent laws of the United States, namely 35 U.S.C. §§ 271, 281, and 284-285, among others.

9.    This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

10.    This Court has personal jurisdiction over the Defendants consistent with the requirements of the Due Process Clause of the United States Constitution and the Texas Long Arm Statute. Defendants have purposefully marketed, offered for sale, sold, imported into the United States, and distributed infringing Chinese-made products through sales and distribution channels with the expectation that the infringing products would be sold here in direct competition with D&D. Defendants have committed and continue to commit acts of patent infringement in the United States, in Texas, and in this judicial district. Accordingly, Defendants have established minimum contacts within Texas and purposefully availed themselves of the benefits of Texas, and the exercise of personal jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice.

11.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(c)(3) because Defendants are not residents of the United States and may be sued in any judicial district including the Western District of Texas where D&D resides and where immediate harm occurred.

### D&D'S PATENTED CHEMICAL INJECTION VALVE

12.     D&D is the sole and exclusive owner by assignment of U.S. Patent No. 12,398,816.

13.     The '816 Patent was issued by the United States Patent and Trademark Office on August 26, 2025 and is titled "Chemical Injection Optimization and Control Valve Device For Dispensing and Optimizing Chemical Injection Processes."

14.     The '816 Patent describes a compact chemical injection optimization and control valve device for regulating the flow of chemicals into a process stream. The device uses an adjustable piston-and-valve assembly to maintain back pressure, prevent siphoning and backflow, and provide more consistent chemical pump output.  The '816 Patent is valid and enforceable and was duly issued in full compliance with Title 35 of the United States Code.

15.     D&D holds all substantial rights in and under the '816 Patent, including the right to grant licenses, exclude others, and to enforce, sue, and recover damages for past and future infringement.

16.     D&D is also the owner by assignment of pending U.S Patent Application No. 19,291,977, a continuation application related to the '816 Patent. The application was filed on August 6, 2025, published as U.S. Patent Application Publication No. US 2025/0361943 A1, and is currently under examination before the United States Patent and Trademark Office.

17.     D&D's chemical injection valve device, the ASV-1100 Anti-Siphon Back Pressure Check Valve, is a compact, multifunctional valve for chemical injection systems. D&D's valve

provides anti-siphon, adjustable back pressure, and check-valve functionality in a single device, helping maintain consistent pump output while reducing unwanted siphoning and backflow from downhole pressures and fluids.

18.    D&D marks its patented anti-siphon injection valve with the '816 patent number.



**DEFENDANTS INFRINGEMENT OF D&D'S '816 PATENT**

19.    Defendants have directly infringed and continue to infringe the '816 Patent by making, using, offering for sale, marketing, selling, importing, advertising, and distributing the Tubeplus Anti-Siphon/Check Valve ("Accused Product").

20.    The Accused Product is virtually identical to D&D's ASV-1100 valve:





Plaintiff D&D's Manifold Assembly

Defendants' Manifold Assembly





21.    The dimensions, design, and construction of the Accused Product are virtually identical to D&D's Valve.

22.    In addition to duplicating all aspects of the design and construction of D&D's ASV-1100 valve, Defendants copied most of D&D's manifold label.

23.    Despite being manufactured in China, Defendants mark their products with D&D's place of business, Snyder, Texas, and D&D's phone number.

24.    Defendants even copied the serial number from D&D's marketing document display it in their own product brochure.



25.     Defendants reproduced D&D's product label format and include the same model number, GPM rating, MAOP rating, Element Part Number, and D&D's tagline, "Designing solutions for technical applications."

26.     On information and belief, Defendants are manufacturing, importing, advertising, marketing, selling, offering for sale, and using other knock-off products that are virtually identical copies of D&D products, including high pressure manifold assemblies and downhole injection valves.

27.     Defendants copied D&D advertisements and marketing materials and use them in their marketing materials for the Tubeplus knock-off products.

## COUNT 1 - INFRINGEMENT OF THE '816 PATENT

28.     D&D realleges and incorporates by reference the allegations set forth above as if restated verbatim here.

29.     Defendants have directly infringed and continue to infringe at least claim 1 of the '816 Patent without authority and in violation of 35 U.S.C § 271 by using (including its own testing),

making, selling, offering for sale, and importing into the United States chemical injection and control valves as exemplified below.

30.     Claim 1 of the '816 Patent recites an embodiment of the claimed subject matter:

1.  A chemical injection optimization and control valve device for dispensing and optimizing chemical injection processes, comprising:

a first tubular housing in which a conical piston travels, said piston having a seal that passes around a portion of an interior circumference of the first tubular housing;

a resilient member holding said piston under tension; and

a pressure adjustment member disposed at the opposite end of said tubular housing from said piston;

an external protrusion section on an external wall of said tubular housing said external protrusion section being configured for cooperative engagement with a fastening tool;

a pressure adjustment stop member formed on an internal wall of said tubular housing; a projection formed on said pressure adjustment member, wherein said projection is arranged and configured to prevent said pressure adjustment member from traveling past said pressure adjustment stop member of said tubular housing;

a seat body housing, comprising a seating surface, wherein said seat body housing receives said first tubular housing and wherein said seating surface receives said piston, said seat body housing further comprising an inlet port and a discharge port;

and an inlet port check valve assembly comprising an inlet fitting, a check ball, and a resilient member, wherein said check ball is held under tension by said resilient member against said inlet fitting which comprises an integral ball seat for said check ball;

wherein said seat body housing comprises a single horizontal inlet channel passing through the interior of said seat body housing such that said inlet port and a top portion of said seat body housing are in fluid communication;

wherein a single horizontal discharge channel passes through the interior of said seat body housing such that a bottom portion of the seat body housing and the discharge port are in fluid communication;

wherein a single vertical channel extends from the upper portion of the seat body housing through the seating surface and intersects the horizontal channel connected to the discharge port, such that the upper and lower portions of the seat body housing are in fluid communication with one another, allowing fluid communication between the inlet and discharge ports;

and wherein when the tubular housing, which contains the conical piston, is fastened to the seat body housing, the piston sits immediately above and in physical contact with the conical seating surface such that in a rest position the piston prevents fluid communication between the inlet and discharge channels.

31.    The Accused Product is a chemical injection and control valve configured to optimize chemical injection processes by retaining desired inlet fluid pressure.

32.    The Accused Product (on the left) features a tubular housing, resilient member, check

ball, pressure adjustment member, seat body housing, and an inlet port check valve assembly

comprising an inlet fitting:

 

33.     The Accused Product comprises a seat body housing, further comprising a seating

surface, wherein said seat body housing receives a tubular housing and wherein said seating

surface receives a conical piston, said seat body housing further comprising an inlet port and a

discharge port.

34.     The Accused Product (above, on the left) features a seat body housing and seating

surface, configured to receive a tubular housing, which further comprises a conical piston and an

inlet port and a discharge port.

35.     The Accused Product includes a pressure adjustment member disposed at the opposite

end.

36.     The Accused Product (below on the left) features a pressure adjustment intended to be

received at the opposite end of the tubular housing:

 

37.     The Accused Product includes a conical piston contained within the housing.

38.     The Accused Product features a conical piston (shown on the right side in each respective photograph below):

 

39.     D&D marks each ASV-1100 product with the '816 Patent number.

40.     Defendants therefore know and have known that they are copying a patented article.

41.     Accordingly, Defendants have actual knowledge of their infringement alleged herein.

42.     Despite such actual knowledge, Defendants have continued to make, use, sell, offer for sale, market, and/or import into the United States the Accused Product.

43.     Defendants intend and have intended that their customers use the infringing Tubeplus infringing valve, thus encouraging, aiding, and abetting infringement of the '816 Patent.

44. Defendants have induced their customers to use the subject matter of at least claim 1 of the '816 Patent by directing, encouraging, and inducing third parties to use the Accused Product in the United States, in Texas, and in this judicial district.

45. Defendants induced infringement under 35 U.S.C. § 271(b) of at least claim 1 of the '816 Patent.

46. Defendants' acts of infringement of the '816 Patent are willful and intentional under the standard set forth in *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016).

47. Defendants' acts of direct and indirect infringement have damaged and continue to damage D&D.

48. Consequently, D&D is entitled to recover for the damages that it has sustained as a result of Defendants' infringing acts in an amount to be determined at trial but in no event less than a reasonable royalty from the date of first infringement, together with interest and costs as fixed by this Court, pursuant to 35 U.S.C. § 284.

49. D&D is entitled to a preliminary and permanent injunction enjoining Defendants from importing, selling, offering to sell, and using the Accused Product pursuant to 35 U.S.C. § 283. Defendants' ongoing infringement satisfies each of the four factors required for a permanent injunction under *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006).

50. D&D has suffered and continues to suffer irreparable harm as a result of Defendants' ongoing infringement.

51. Defendants are direct competitors of D&D and market the Accused Product in the same markets and to the same consumers as D&D.

52. Defendants' sale of the Accused Product undercuts D&D's sales, erodes D&D's market share and customer relationships, and damages the goodwill and reputation that D&D has built

as the originator of the D&D anti-siphon injection valve and technology embodied therein.

53.     Monetary damages alone cannot adequately compensate D&D for these losses, particularly the harm to its market position, customer base, and brand recognition.

54.     Defendants' ongoing infringement will continue absent injunctive relief thereby inflicting continuing and irreparable harm on D&D for which there is no adequate remedy at law.

55.     The balance of hardships favors injunctive relief.

56.     D&D invested significant resources in developing, patenting, and commercializing the invention claimed in the '816 Patent. By contrast, Defendants have no legitimate interest in continuing to manufacture, import, market, and sell the Accused Product, which is a virtual copy of D&D's patented design and even copies features of D&D's product label including the D&D serial number and D&D's business information.

57.     Any hardship to Defendants from being enjoined from selling an infringing product is not cognizable in equity.

58.     The public interest favors entry of a permanent injunction. The patent system promotes innovation by granting inventors the exclusive right to practice their inventions for a limited time. Enforcing D&D's patent rights through injunctive relief reinforces that system and provides incentives for continued innovation in the oil and gas services industry. By contrast, permitting Defendants to continue infringing would undermine patent protections, reward the copying of patented American technology, and harm consumers who may be misled by Defendants' copying of D&D's product labeling and business information.

## NOTICE OF REQUIREMENT OF LITIGATION HOLD

59.     Defendants are hereby notified that they are legally obligated to locate, preserve, and maintain all records, notes, drawings, documents, data, communications, materials, electronic recordings, audio/video/photographic recordings, and digital files, including edited and unedited

or "raw" source material and other information and tangible things that Defendants know or reasonably should know may be relevant or lead to relevant information regarding actual or potential claims, counterclaims, defenses, and/or damages by any party or potential party in this lawsuit, whether created or residing in hard copy form or in the form of electronically stored information (hereafter collectively referred to as "Potential Evidence").

60.     As used above, the phrase "electronically stored information" includes without limitation: computer files (and file fragments), e-mail (both sent and received, whether internally or externally), information concerning e-mail (including but not limited to logs of e-mail history and usage, header information, and deleted but recoverable e-mails), text files (including drafts, revisions, and active or deleted word processing documents), instant messages, audio recordings and files, video footage and files, audio files, photographic footage and files, spreadsheets, databases, calendars, telephone logs, contact manager information, internet usage files, and all other information created, received, or maintained on any and all electronic and/or digital forms, sources and media, including, without limitation, any and all hard disks, removable media, peripheral computer or electronic storage devices, cloud storage, laptop computers, mobile phones, personal data assistant devices, personal communication devices, iPhones, video cameras and still cameras, and any and all other locations where electronic data is stored.  These sources may also include any personal electronic, digital, and storage devices of any and all of Defendants' respective agents, resellers, or employees if electronically stored information of Defendant(s) resides there.

61.     Defendants are hereby further notified and forewarned that any alteration, destruction, negligent loss, or unavailability, by act or omission, of any Potential Evidence may result in damages or a legal presumption by the Court and/or jury that the Potential Evidence is not

favorable to Defendants' claims and/or defenses.  To avoid such a result, Defendants' preservation duties include, but are not limited to, the requirement that Defendants immediately notify their respective agents and employees to halt and/or supervise the functions of Defendants' respective electronic systems and refrain from deleting Potential Evidence, either manually or through a policy of periodic deletion.

## JURY DEMAND

D&D demands a trial by jury on all claims, issues, and damages so triable.

## PRAYER FOR RELIEF

Plaintiff D&D DesignTech, Ltd. respectfully prays for entry of a judgment against Defendants as follows:

1) Declaring that Defendants have directly and indirectly infringed Claim 1 of the'816 Patent;

2) Awarding all actual, consequential, special, punitive, increased, and/or statutory damages resulting from Defendants' infringement, together with pre- and post-judgment interest as allowed by law;

3) Ordering an accounting of all damages if necessary;

4) Awarding reasonable attorneys' fees, costs, and expenses incurred by D&D in this action;

5) Declaring that Defendants have willfully infringed the '816 Patent;

6) Holding Defendants jointly and severally liable; and

7) Granting a permanent injunction pursuant to 35 U.S.C. § 283 enjoining Defendants and their respective officers, agents, employees, successors, assigns, and all persons acting in concert or participation with Defendant(s) from making, using, offering to sell, selling, or importing into the United States the Accused Product or any other product

that infringes the '816 Patent; and

8) Granting such other and further relief as the Court may deem just and proper under the circumstances.

June 29, 2026                                    Respectfully submitted,

_____
Cabrach J. Connor
Texas Bar No. 24036390
**CONNOR LEE & SHUMAKER PLLC**
609 Castle Ridge Road, Suite 450
Austin, Texas 78746
Telephone: (512) 646-2060
Facsimile: (888) 587-1134
Cab@CLandS.com

Kelly Ransom
Texas State Bar No. 24109427
**KELLY HART & HALLMAN LLP**
303 Colorado, Suite 2000
Austin, TX 78701
Tel: (512) 495-6400
kelly.ransom@kellyhart.com

***Counsel for Plaintiff D&D DesignTech, Ltd.***